# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **NASHVILLE COMMUNICATIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. _____** |
| | ) | **JURY DEMANDED** |
| **AUTO-OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Nashville Communications, Inc., and for its Complaint against Auto-Owners Insurance Company, would show as follows:

## PARTIES AND JURISDICTION

1. Nashville Communications, Inc. ("NashComm") is corporation duly formed under the laws of the state of Tennessee. At all times relevant hereto, NashComm owned the commercial property located at 330 Plus Park Boulevard, Nashville, Tennessee 37217 (the "Insured Premises").

2. The Defendant, Auto-Owners Insurance Company ("Owners"), is an insurance company organized under the laws of the State of Michigan with a principal place of business located at 6101 Anacapri Boulevard, Lansing, Michigan 48917. At all times relevant hereto, Owners conducted and transacted insurance business with NashComm in Davidson County, Tennessee.

3. This Complaint originates as the result of a storm event that caused substantial insured losses to the structures located at the Insured Premises, and Owners' failure and refusal to promptly and fully pay NashComm's insurance claim.

4. Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Venue is proper in this Court because the Insured Premises giving rise to the insurance dispute in controversy is located in Davidson County, Tennessee.

**FACTS**

The Policy

5. At all times relevant hereto, NashComm was the insured pursuant to an insurance contract whereby Owners agreed to insure the structures located at the Insured Premises against property damage, bearing Policy No. 80173260 (the "Policy"). As relevant hereto, the Policy's term includes March 3, 2023.

6. The Policy provided insurance coverage for direct physical loss of or damage to the buildings located on the Insured Premises and such other insurance coverage, as specifically set forth in the Policy.

7. The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss of or damage to the covered property except for those specifically excluded or limited by the Policy.

8. Pursuant to the Policy, NashComm paid an annual premium to Owners in exchange for insurance coverage. NashComm paid the required premiums, at all times relevant to this Complaint.

<u>The Loss & Claim Investigation</u>

9. On or about March 3, 2023, a severe storm with substantial winds struck the buildings at the Insured Premises, resulting in substantial direct, physical loss to the building, including but not limited to, damage to the roofs of the buildings and other exterior components (the "Loss").

10. The Loss occurred during the term of the Policy.

11. NashComm promptly reported the Loss to Owners.

12. Owners then investigated the Loss and NashComm's claim for insurance coverage.

13. Owners agreed that the Insured Premises was damaged by wind, but a dispute arose between NashComm and Owners as to the amount of the loss associated with the storm damage. Recognizing that Owners' estimations of the amount of loss was grossly insufficient to repair the damage to the Insured Premises, NashComm invoked the appraisal provision of the insurance Policy.

14. The Policy's appraisal clause provides as follows:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

15. NashComm selected Zachary Baker as its appraiser. Owners did not object to the selected appraiser.

16. Owners agreed to appraisal, selecting Paul Vitolins as its appraiser. The two appraisers appointed Stuart MacDiarmid as umpire.

17. On April 30, 2024, appraiser Zachary Baker and umpire Stuart MacDiarmid determined the total amount of the Loss to be $230,710.95—less $43,241.85 in depreciation—rendering the actual cash value of the Loss as $187,469.10 ("Appraisal Award").

18. After the Appraisal Award, NashComm requested that Owners make payment pursuant to the Appraisal Award, as required under the Policy.

19. However, Owners has refused to pay the Appraisal Award, inaccurately contending that the Appraisal Award includes improper causation and/or coverage determinations.

20. The Appraisal Award, because it is not defective and there are no coverage or causation issues remaining, is binding on Owners.

21. NashComm's claim involves no coverage or causation issues, but rather, simply requires a determination of the amount of the Loss. The only disputed issue is the amount owed by Owners to NashComm as a result of the Loss. There is no reasonable coverage dispute, and this claim was appropriate for the appraisal process as set forth in the Policy.

22. Owners' refusal to honor the Appraisal Award, and its refusal to pay NashComm the amounts owed to it for the Loss, is without justification and constitutes a breach of the insurance contract.

23. Owners' refusal to pay the money and benefits due and owing NashComm under the Policy, and its wrongful refusal to honor the Appraisal Award, have caused NashComm to initiate this Complaint to recover insurance proceeds and/or other Policy benefits to which it is entitled.

24.     Owners' alleged reasons for denying NashComm's full claim are fabricated, wrongful, and done with the intent to injure and harass NashComm.

25.     Owners' failure and refusal to pay NashComm the amounts owed to it for the Loss is without justification and is intentional, fraudulent, malicious, and/or reckless.

26.     A dispute over scope of the work is nothing more than a dispute over the monetary value of returning the insured premises to its pre-loss condition. *See State Farm Fire & Cas. Co. v. Harper*, No. 3:20-cv-00856, 2021 U.S. Dist. LEXIS 245383, at *8 (M.D. Tenn. Aug. 13, 2021).[1]

---

[1]     Recent U.S. District Courts for the Western, Middle, and Eastern District of Tennessee, in interpreting appraisal clauses in insurance policies just like the one at issue here, are in accord:

- *Morrow v. State Farm Fire & Cas. Co.*, 592 F. Supp. 3d 672 (E.D. Tenn. 2022) (holding that appraisal is mandatory once properly invoked and disputes about the scope of work a repair requires is a dispute about the amount of loss rather than coverage when the insurer has already conceded that at least some storm damage is covered);

- *Ingram v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 245457 (E.D. Tenn. Dec. 14, 2021) (holding that appraisal was mandatory and that "scope" is not a coverage issue when at least some storm damage is covered);

- *Smith v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 245386 (W.D. Tenn. Oct. 27, 2021) (affirmed by 2021 U.S. Dist. LEXIS 239469 (W.D. Tenn. Dec. 15, 2021) (ordering appraisal to proceed and noting it is mandatory once properly invoked and holding that "[b]y contesting whether there is additional loss, however, [a Defendant] necessarily disagrees with [a CRG] that the total amount of loss CRG incurred includes any additional loss."

- *State Farm Fire & Cas. Co. v. Harper*, 2021 U.S. Dist. LEXIS 245383 (M.D. Tenn. Aug. 13, 2021) (affirmed by 596 F. Supp. 3d 1032 (M.D. Tenn. 2022)) (holding that scope is appraisable and is part and parcel of the amount of loss, that whether the property can be repaired or replaced is a disagreement about the amount of loss, and that if disputes about scope are unsurprising and if scope disputes could be used to avoid appraisal then "it would effectively eliminate appraisal as a workable method of alternative dispute resolution.").

- *Kush Enters., LLC v. Mass. Bay Ins. Co.*, No. 3:18-CV-492, 2019 U.S. Dist. LEXIS 241191 (E.D. Tenn. Nov. 7, 2019) ("By contesting whether there is additional covered loss, however, [the insurer] necessarily disagrees with [the insured] that the total amount of loss [the insured] incurred includes any additional loss. The plain language of the provision

## Count I - Breach of Contract

27.     The allegations contained in preceding paragraphs of this Complaint are incorporated herein by reference as if set forth verbatim.

28.     The Policy issued by Owners is a binding contract and is supported by valid consideration.

29.     Owners is in total, material breach of the Policy and is liable to NashComm in the maximum amount allowed by the Policy for the Loss. Specifically, Owners' breach of contract includes the following, without limitation: (a) Owners' failure and refusal to pay the amounts owed to NashComm for the damage to the Insured Premises; (b) Owners' improper attempts to infringe upon the appraisal process, to which the Parties properly consented, to resolve the Parties' dispute concerning the amount of the Loss.

30.     As a result of Owners' breach of contract, NashComm has sustained substantial, compensable losses for the amounts claimed under the Policy, including but not limited to, the replacement cost of the damage to the Insured Premises, plus consequential damages.

31.     Owners is liable to NashComm for its losses.

32.     Owners' breach of contract was intentional, fraudulent, malicious, and/or reckless, thereby justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013). Specifically, Owners intentionally, fraudulently, maliciously,

---

allows either party to demand appraisal when there is a disagreement on the amount of loss. As a result, the court finds the provision is applicable and can be enforced by this Court.");

- *Global Aero., Inc. v. Phillips & Jordan, Inc.*, 2015 U.S. Dist. LEXIS 124911 (E.D. Tenn. Sept. 17, 2015) (ordering appraisal to proceed despite the carrier's argument that the issue of whether the policy allows new or used parts was a coverage question involving the interpretation of the phrase "materials and parts of like kind and quality.").

and/or recklessly: (1) failed to effectuate a prompt and fair settlement of NashComm's full claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding NashComm's claim for insurance proceeds; (3) unjustly refused and/or failed to pay NashComm's full claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to treat NashComm's interests with equal regard to its own; (5) failed and refused to pay NashComm's full, valid claim; (6) unnecessarily delayed payment of NashComm's insured losses; (7) misrepresented relevant facts and policy provisions to NashComm; (8) intentionally failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (9) forced NashComm to file a lawsuit in order to enforce its rights under the Policy; (10) ignored valid portions of NashComm's claim for no good reason and with no explanation; (11) refused and failed to obtain all reasonably available information before alleging it had no further obligations to NashComm; (12) unreasonably delayed the handling and payment of the claim; (13) failed to fully and promptly pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (14) offered NashComm substantially less than the amount actually owed in an effort to deprive it of its rights under the Policy; (15) utilized biased "experts" in an effort to deprive NashComm of the insurance proceeds to which it was entitled; (16) engaged in conduct designed to decrease and minimize the amount to be paid to NashComm; (17) concealed important and material facts from NashComm in an effort to minimize the amount Owners would have to pay on the claim; and (18) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial.

33. Owners knew, or reasonably should have known, that NashComm was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless, acting with conscious disregard for NashComm's rights and with the intention of causing, or willfully

disregarding the probability of causing, unjust and cruel hardship on NashComm, Owners consciously ignored NashComm's full, valid claim, then later denied NashComm's full claim, and thus withheld monies and benefits rightfully due NashComm.

34.     NashComm seeks, and is entitled to, punitive damages.

**Count II – Statutory Bad Faith**

35.     The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

36.     Owners' failure to pay the amounts contractually owed to NashComm is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than 60 days have passed since a formal demand has been made on Owners and full payment has not been made for the Loss, as required pursuant to the Policy and for which the 25% statutory penalty for bad faith should be invoked.

37.     The bad faith of Owners I evidenced by the fact that, at all times hereto, Owners knew, or reasonably should have known, that NashComm was justifiably relying on the money and benefits due it under the terms of the Policy, and as otherwise promised and represented by Owners, as well as the actions of Owners as set forth above and below. Nevertheless, acting with conscious disregard for NashComm's rights and with the intention of causing, or willfully disregarding the probability of causing, unjust and cruel hardship on NashComm, Owners consciously ignored NashComm's valid claim, denied NashComm's full claim, and withheld monies and benefits rightfully due it.

38.     On June 11, 2024, NashComm gave notice of its intent to sue Owners for statutory bad faith if its claim was not honored, and as of the filing of this Complaint (more than 60 days

following the referenced notice), Owners has maintained its unlawful denial of Plaintiff's full, valid claim.

39.     Owners' bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, specifically but not limited to the allegations set forth in Paragraph 32, which are incorporated by reference, together with the following:

    a.    Owners' failure to fully inform NashComm of its rights and obligations under the Policy;

    b.    Owners' failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of NashComm's claim when liability was reasonably clear;

    c.    Owners' refusal to pay NashComm's claim without conducting a reasonable investigation based on all available information;

    d.    Owners' intentional refusal to fully investigate NashComm's claim and to obtain all available information before alleging that it had no further obligations to NashComm;

    e.    Owners' intentional failure to properly adjust NashComm's claim and to pay NashComm fully for its losses;

    f.    Owners' engaging in acts and practices toward NashComm that are contrary to the good faith duties owed to NashComm; and

    g.    Owners' unjustified refusal to pay NashComm's claim for its own financial preservation.

9

40.     In so acting, Owners intended to—and did—injure NashComm in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, NashComm respectfully request that this Honorable Court award against Owners as follows:

a) For specific performance of the Policy;

b) For compensatory damages in an appropriate amount to be determined by the jury;

c) For punitive damages in an appropriate amount to be determined by the jury;

d) For a statutory bad faith penalty of 25%'

e) For all costs incurred by Plaintiff as a result of this action;

f) For pre- and post-judgment interest; and

g) For such other further and general relief as this Court deems just and equitable.

## **JURY DEMAND**

NashComm demands a jury of its peers.

Respectfully submitted,

McWHERTER, SCOTT & BOBBITT PLC

s/Jonathan L. Bobbitt
JONATHAN L. BOBBITT #23515
jonathan@msb.law
NANCY R. STEER #33562
nan@msb.law
EMILY S. ALCORN #33281
emily@msb.law
109 Westpark Drive, Suite 260
Brentwood, Tennessee 37027
T: (615) 354-1144
F: (731) 664-1540

*Attorneys for Plaintiff*